(Hamilton County Court of Insolvency.)

## IN THE MATTER OF THE ASSIGNMENT OF MICHAEL H. DEHNER.

A chattel mortgagee who perfects his security by filing the mortgage before others who were given mortgages at the same time, is, by reason of diligence, and in the absence of an agreement or fraud, entitled to priority.

---

McNEILL, J.:

Michael H. Dehner, just prior to making an assignment, gave several chattel mortgages to creditors, among which

was one to Margaret Wiecher. These mortgages were all given at the same time, and evidence was submitted to the effect that Dehner at the time of the execution of the mortgages stated that he intended to treat all the mortgagees alike. This statement, I think the evidence shows, Mrs. Wiecher did not hear. As soon as she received her mortgage she had it sent to the recorder's office and filed. The other mortgages were all filed together about thirty minutes later. It is now contended that as Mrs. Wiecher had knowledge of the other mortgages at the time she received her mortgage, she should not be allowed a preference over them on distribution.

Section 4150, of our Revised Statutes, provides that a mortgage of goods and chattels, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith, unless the mortgage or a true copy thereof be forthwith deposited as directed in the next section (sec. 4151). Section 4151 provides, that such mortgage shall be deposited with the township clerk of the township in which the mortgagor re sides, * * * or, if the mortgagor resides * * * in the township in which the office of the county recorder is kept, then the mortgage is to be deposited in that office, and the officer with whom it is filed is required to endorse thereon the exact time of its receipt. In this case all the mortgages were properly filed in the office of the county recorder.

As shown above, a chattel mortgage is not valid as against creditors until it is filed as required by the statute. The proper filing of it perfects it as a security.

In the case of Cass v. Rothman, 42 Ohio St., 380, Judge Owen in delivering the opinion of the court says: "The fact that the officer with whom the mortgage is to be deposited is required to endorse upon it the exact time of its receipt, lends force to the view that the employment of the word 'forthwith' in the statute was not intended to leave the question of priority between creditors open to controversy upon the facts of each case."

Mrs. Wiecher perfected her security before the other mortgagees perfected theirs, and there being no agreement on her part as to when she would file her mortgage, and no bad faith on her part toward the other creditors, she is entitled to the benefit of her greater diligence. An order will therefore be made giving priority to the mortgage of Mrs. Wiecher.

---

(Green Co., O., Common Pleas Court.)

May Term, 1897.

CHARLES WEYMOUTH et al. v. MARTHA A. IRWIN et al.

---

1. A testator by his will—December 29, 1867—devised and bequeathed to his wife all his real and personal estate, to be used by her as she might think best and proper during her natural life. All of his estate remaining after the death of his said wife, he devised and bequeathed to his son, George, and daughter, Martha Jane, to be used by them jointly during their natural lives, and after the death of either, the survivor to have the sole right to the use of the same during life. He disposed of the remainder as follows: "Item 4. After the death of the above named children, I desire that the whole estate of both real and personal property be sold and the proceeds of the same divided equally between the heirs of Mary A. Johnson, as one share; the heirs of Horace Weymouth, as one share; William Weymouth, as one share, and Gregory Weymouth, as one share; provided, that if Gregory Weymouth desires to purchase the old homestead, he shall be allowed one thousand dollars more than an equal share if he does buy it; otherwise, as above stated: I do hereby nominate and appoint A. W. Osborne, executor of this, my last will and testament, hereby revoking all former wills by me made. Witness my hand, etc." The testator died in 1868. The widow elected to take under the will, and died in 1873. The testator knew when he executed the will that Mary A. Johnson and Horace Weymouth—a daughter and son—had been dead for several years, and that each left children who were then living. William W. Weymouth—a son of the testator—died testate in 1877. By his will, he devised all his title and interest in the estate of his father to his sister, Martha Jane, who died testate in 1889. By her will, she devised all her interest in the estate of her father to John W. Garrett et al. Gregory Weymouth died in 1895. In 1872, through a trustee, he conveyed all his title and interest in said homestead to his wife, Lydia, and the heirs of her body. George Weymouth died in 1896. The first and final account of the executor was settled July 29, 1886, all of the debts of said estate having been fully paid. There is no personalty.

In an action for partition of the real estate designated in the fourth item of the will as "the old homestead," Held:

2. A present gift vesting in interest at the death of the testator, is to be im-

plied from the direction in the will to sell said real estate and divide the proceeds. The right of possession and enjoyment was postponed to let in the intermediate life estates.

3. The grantees of Gregory Weymouth are seized of an undivided fourth part of said real estate. The devisees of Martha Jane (a devisee of William Weymouth), are seized of an undivided fourth part of said real estate.

4. The devisees named in the fourth item of the will, or those claiming under them entitled to share in the proceeds of sale, may elect to take the real estate and have the same partitioned.

The executor named in the will is not authorized to sell said real estate.

SMITH, J.

This is an action for the partition of two hundred and forty acres of land, designated in the fourth item of the will of William Weymouth, Sr., as the "old homestead." The facts are fully stated above. The issues presented relate to the validity of the conveyance by Gregory, the devise by William and the power or authority of the executor to sell said real estate. These issues are determined by the construction to be given the provisions of said will. It is apparent from the will that the desire and intention of the testator was after the death of the widow, the daughter Martha Jane, and the son George, to divide his estate into four equal parts.

The testators knew that Mary A. Johnson and Horace Weymouth were dead; that each left issue who were living at the date of the will, he therefore provided for the heirs of each, one share. These heirs took as devisees and legatees under the will.

Having provided for the heirs of his deceased children, he provides for his children then living, William and Gregory, one share each.

That he did not intend that the heirs of William and Gregory should take as devisees and legatees is evident.

A sufficient answer to this claim is, that the will does not so provide. Having expressly provided that the heirs of Mary A. shall have one share, and the heirs of Horace one share, because he knew that both Mary A. and Horace had deceased years before, leaving issue who were living at the date of the will, effect must be given to what the testator has forborne to say.

The further fact that Gregory is granted a special privilege or option to purchase the homestead and receive one thousand dollars more than an equal share "if he does buy it," is conclusive

of the fact that the testator intended that Gregory should take one share under the will, not his heirs.

If Gregory, then William also, because the same language is used as to each "William Weymouth as one share, Gregory Weymouth as one share."

The provisions of the fourth item of the will are not ambiguous.

The language is plain.

When did the estate or interest vest?

It is claimed on the one hand, that it vested upon the death of the testator, and that the right of enjoyment was postponed until after the death of Martha Jane, George and the widow.

It is claimed on the other hand, that it did not vest until after the death of George, who survived Martha Jane and the widow.

There was no contingent remainder dependent upon something which might or might not happen. The death of Martha Jane, George, and the widow were the only events to occur before the enjoyment of the estate or interest by Gregory, William and the heirs of Mary A., and Horace.

These were not contingencies which might or might not happen.

The interest to each, to William, Gregory, the heirs of Mary A., the heirs of Horace, was determined by the will—one-fourth—subject to the provision that if Gregory purchased the homestead, he should have one thousand dollars more than one-fourth.

The persons to take were determined, William, Gregory, the heirs of Mary A., deceased, the heirs of Horace, deceased.

Why, then, was there not upon the death of the testator a present right to future possession or enjoyment?

It is said there was no willing or dispositive clause.

In Linton v. Lacock, 3 Ohio St., 128, on p. 137, the court say:

"Nor does the vesting of the estate encounter any serious opposition for want of an express devise to the children. The required division implies a gift which as effectually carries the estate as an express devise would take it." Also, on page 135: "Moreover, there does not appear to have been any intent to postpone the right of his children to an immediate title to the estate, but the postponement of possession was merely to let in an intermediate estate for a term of years to the testator's wife, which was not inconsistent with a vested right of the children in the remainder. Bequests of personalty of this character vest immediately, and on the death of the legatee during the intermediate estate pass to their representatives."

In Brasher et al. v. Marsh et al., 15 Ohio St., 103, a clause expressing the "wish and desire" of the testator was held to be dispositive in its nature and

to give a vested interest to all testator's children named in said clause. See also Milliken v. Welliver, 37 Ohio St., 460; Flickiger v. Saum, 40 Ohio St., 591. In Richey v. Johnson, 30 Ohio St., 288, on page 295, the court say:

"But here, as we have said, there is no gift, except as it is implied in an order to divide a fund to be created after the happening of a future event between parties who are not named but are described as classes of persons, and the word "heirs" is clearly used as descriptive of a portion of the persons between whom the division is to be made. * * * The words 'any that may be dead' import uncertainty in the mind of the testator. This was not an uncertainty as to which of his brothers would survive him, for the district court found as a matter of fact that the will was made only a day or two before the testator's death in immediate expectation of that event, as is fairly to be inferred, and the testator well knew at that time that his sister Mary had died twenty years previously, leaving three children who were then in full life, and that his four other brothers and sisters were living. But he was speaking of the division of a fund to be made at the death of his wife. She might live many years, and he could not know how many, or whether any of his brothers and sisters would survive her. As a matter of fact, she survived all of them. Read in the light of these circumstances and in view of the explanation which the testator gives of the sense in which he uses the word 'heirs,' we think the direction as to the division of the funds admits of but one construction, after his wife's death the farm was to be sold and the proceeds of sale divided equally between such of his brothers and sisters as might then be living and the issue or lineal descendants of such brothers and sisters as might then be dead, such issue to take per stirpes and not per capita. * * * The gift itself, and not merely the time of payment, remained contingent; therefore, during the life of the widow, the persons entitled to the enjoyment of the fund could not be ascertained till her death."

Here the court held that a present gift vesting in interest at the testator's death, was not implied from the order or direction to divide a fund because of the provision in the will "the children of any (brothers and sisters of the testator) that may be dead to have the shares of their deceased parents." For that reason the gift itself was contingent during the life of the widow. For that reason, and that only, the persons entitled to the enjoyment of the fund could not be ascertained until her death.

Referring to a contingent and vested interest, the court say on page 295:

"If the contingency is attached to the thing, or right given, or the person to take, the interest is contingent; if it is attached to the time when the thing or right is to be enjoyed, it is vested, the contingency referring merely to the payment or division. In the former case it is in the nature of a condition precedent, which is the consideration of the gift; but in the latter it is a mere postponement of what is due by absolute right. This does not make the legacy contingent unless the postponement arises from the situation of the legatee on account of the want of an existing present capacity to take or enjoy, or where the ascertainment of the person to take is referred to a future period and the right to take depends upon his being in esse at that time."

Applied to the case at bar, the postponement of the division of the proceeds of sale of the land did not arise from the situation of the legatees or any of them on account of the want of an existing present capacity at the time of the death of the testator to take or enjoy.

The postponement did not arise because the ascertainment of the persons to take was referred to a future period. The postponement did not arise because the right of the persons to take depended upon their being in esse at that time. The postponement was merely for the purpose of letting in the intermediate life estates.

There was no contingency as to the persons to take. There was no contingency as to the portion they were to take.

If the death of the widow and Martha Jane and George had occurred prior to that of the testator, the right of enjoyment would have been accelerated as in the case of Woolley et al. v. Paxson et al., 46 Ohio St., 307. See page 318, as to whether interest vested or contingent.

In Bolton v. Bank, 50 Ohio St., 290, 293, the court say. "It is the settled rule of this court to construe all devises and bequests as vesting in the devisee or legatee at the death of the testator unless the intention of the testator to postpone the vesting to some future time is clearly indicated in the will."

This rule applies as well to personalty as to realty. The construction is the same as if the provision in the fourth item be treated as a bequest of personalty.

If the item of the will under consideration had provided "to William Weymouth or his heirs one share, to Gregory Weymouth or his heirs one share," the devise or bequest would not be contingent, the words, "or his heirs" being regarded as words of limitation and not as the substitution of a new class of beneficiaries taking as purchasers from the testator. Linton v. Laycock, 33 Ohio St., 128; Brasher et al. v. Marsh et al.,

15 Ohio St., 103; Bolton v. Bank, 50 Ohio St., 290.

But in the case at bar the devise or bequest to William and Gregory, and to the heirs of Mary A. and Horace, is absolute.

The case of Brasher et al. v. Marsh et al., supra, is directly in point in favor of the claim that the devisees or legatees took a vested interest at the time of the death of the testator. There, amongst other provisions in the will, was the following:

"It is furthermore my will that it be understood that I do not wish any of my town property be sold or disposed of during the lifetime or widowhood of my beloved wife, or until my youngest daughter, Harriet, becomes of age. But that the property be rented to the best advantage, and each of my children draw their proportions of the said rent as they arrive at age, my wife Mary Ann, to draw the rents until then. After the death of my before named wife, my will is, that my property in town, namely, my property at the corner of Main and Columbia streets, also my property on the corner of Main and Sixt'i streets, be disposed of or sold to the best advantage, the proceeds of which to be divided among my then living children or their heirs, including several sums or amounts of lands given to my three sons, as also all money and other property given to my sons-in-law and charged to them."

Among the children of the testator were Mary Ann and Charlotte. Mary Ann, after the death of the testator (June 19, 1819), intermarried with R. C. Brasher and died on the 15th of December, 1838, leaving three children.

Charlotte, who at the time of the testator's death, was married to James Clark, died in June, 1844, leaving children and grand-children.

Harriet, the youngest daughter, attained her majority June 23, 1834, prior to the death of Mary Ann and Charlotte.

Mary Ann, the widow, died on the 4th of November, 1844, after the death of Mary Ann, the daughter, and Charlotte.

In 1832, Mary Ann Brasher and her husband conveyed to William Alter by deed of quit-claim, all their interest in the "town property" described in the will, and all interest in the estate of Frederick Alter, deceased.

Charlotte Clark and her husband by two deeds of warranty, one in 1832, the other in 1834, conveyed to William Alter all their interest in the "town property" and in the estate of Frederick Alter, deceased.

William Alter also acquired the interests of the other brothers and sisters in said town property by conveyance after they became of age.

The action was brought by the children of Mary Ann Brasher, deceased, and the children and grandchildren of Charlotte Clark, deceased, against the defendants who derived their title through intermediate conveyances from William Alter, grantee of Mary Ann and Charlotte, to obtain an order of sale of the "town property" mentioned in the item of the will herein above set forth, an account of the rents and profits, and a distribution of its proceeds, plaintiffs claiming they were entitled to two-sevenths as the heirs of Mary Ann and Charlotte.

Bearing in mind the fact that Mary Ann and Charlotte conveyed their interest in said property and died before the widow, and that under the will there was to be no division of the proceeds of sale until after the death of said widow, said proceeds to be equally divided "among my then living children or their heirs" and the further fact that there was no disposing clause except in the following: "After the death of my before named wife, my will is that my property in town, namely, * * * be disposed of or sold to the best advantage, the proceeds of which to be divided equally among my then living children or their heirs," there was presented a much stronger case for the claim that the interest did not vest until the termination of the life estate, than in the case at bar.

There, as claimed in this case, was no devise of the town property, but of the proceeds, a division of the proceeds of sale..

There, as in this case, was no "willing clause" giving to the children the proceeds of sale, but the expression of a desire that after the death of the widow said property be sold and the proceeds equally divided.

But unlike the case at bar, the proceeds were not to be divided among the testator's children named in the will and the heirs of those known to be deceased, but was to be divided among the testator's then living children or their heirs.

It was there claimed on behalf of the plaintiffs that it could not be known who were the "then living children" of the testator until the death of the widow, and that none of the children took an interest except those who survived the widow, and that the words "or their heirs" created a new class of beneficiaries where any of the children deceased prior to the death of the widow.

If, therefore, the estate or interest of the children of testator did not vest until after the death of the widow, Mary Ann and Charlotte had no interest to convey, and plaintiffs, who were their children and grand-children and claimed under the clause, "or their heirs", were entitled to the relief prayed for.

But the court held that as the plaintiffs could only take through their parents, who had conveyed away all

their interest in their lifetime, the former had no title to, or interest in the property. The conveyances of Mary Ann and Charlotte being held valid in that case, the grounds for holding the conveyance of Gregory and the devise by William valid in the case at bar are manifest.

Another well settled rule of construction as applied to wills, is the presumption against intestacy as to any part of the testator's estate. That the testator intended to make an equal distribution among his living children and the heirs of those who were dead at the time of the execution of the will is clear.

The testator at least, had under consideration the fact that Gregory might survive the widow and Martha Jane, and George, for he provides a privilege or option in favor of Gregory which could not be exercised until after the termination of the life estates.

Of course, there is no question but that William and Gregory under the provisions of the will would take a fee simple without the use of the word "heirs."

The will should be construed with reference to the presumption that the testator intended to, and did dispose of his entire estate, the rule that the law favors the vesting of devises and bequests and giving effect to the manifest intention of the testator to provide equally among his children after the intermediate life estates.

Considering these questions, the following language from the opinion of the court in Linton v. Laycock, 33 Ohio St., 128, 137, applies:

"This theory only will give effect to the apparent understanding of the testator and effect his intention of securing his estate subject to the bequest to his wife, equally to all his children whether living or dead at the time of division. This view of the will effects a vesting of the estate as favored by the law and does no violence to its provisions, while a contrary view regarding the remainder to the children as contingent leaves the estate but partially or loosely disposed of; renders it partial and not equal toward the testator's children; converts words of limitation to words of purchase upon a doubtful construction of words; renders the will more doubtful and less in accordance with the natural and fairly apparent intention of the testator."

Referring to the rule sometimes applied to legacies, fixing the time of vesting at the time of payment of division, after quoting from Kinsey v. Larder, 15 S. & R., 192, the clause: "The distinction between merely appointing a time for the payment of a legacy and the annexing the time to the very substance of the gift is borrowed from the civil law, and the rule of construction which in this particular governs cases of legacies is inapplicable to cases of devises which

are governed by the common law," the court say "this then is only another case where the testator used nearly the same words in regard to the division of his estate amongst all his children then living or their heirs, which were employed in the will in Brasher v. Marsh, supra, without intending in this case as was not intended in that, to create a contingent estate."

Here the Brasher-Marsh case is affirmed, and, as heretofore appears in that case, the interest was of the proceeds of a sale of real estate to be divided after the death of testator's wife.

In effect the court approves and affirms the decision of the Brasher-Marsh case in not applying the rule just stated, sometimes applied to legacies.

The provisions for a division and payment in that case as in the case at bar merely appointed a time for the payment of the legacies, and did not annex the time to the very substance of the gift.

The devise by William and the conveyance by Gregory are therefore valid.

As to the authority of the executor, A. W. Osborne, to sell the real estate. It is held in Flickinger v. Saum, 40 Ohio St., 591, that where there is a direction to sell real estate the mere nomination of an executor does not confer on him authority to sell. It must further appear that the proceeds of sale shall pass through his hands for payment. The executor must be either expressly directed to sell, or by implication, by directing him to make the division, or perform such duties as can only be discharged by first making a sale. See opinion, pp. 600-601.

In the case at bar no trust was created. There is no provision in the will, either express or implied, that the executor should make division or payment, and he was not charged with the performance of any duties which could not be discharged without a sale of the land.

It is admitted that his final account was settled July 29, 1886.

In Holt et al. v. Lamb et al., 17 Ohio St., 374, it is held that where land is devised to a tenant for life with direction that at his death it be sold and the proceeds divided among the children, the children may elect at his death to take the land itself or have it sold for their benefit.

In that case the testator by his will gave an estate for life in 104 acres of land to his brother, George Stevenson, and made further disposition of said land as follows: "And after the decease of the aforesaid George Stevenson, then my will and desire is, that the aforesaid described tract of land shall be sold and equally divided between said George Stevenson's four daughters, viz.: Ruth, Sarah, Rebecca and Mary."

Here was the mere expression of the

will and desire of the testator that the land be sold.

This case is cited in support of the claim that the estate or interest of those mentioned in the fourth time of the will of William Weymouh, deceased, in the case at bar did not vest until after the death of the life tenants. The second proposition of the syllabus is: "The right or estate of such children does not accrue until the death of the tenant for life, although his estate may be determined during his lifetime."

No question arose in that case as to when the estate vested, but only when the right to possession of the estate accrued so as to set the statute of limitations to running. The court did not say that the estate or interest did not vest until the death of the life tenant, but that the right or estate of the children did not accrue until the death of the life tenant. The statute of limitations began to run against them from the time they were entitled to the possession and enjoyment of the estate. Under the peculiar facts in that case the question arose whether the right to possession of the land accrued when the life estate determined during the lifetime of the life tenant, in which case the right of action by the children was barred by the statute of limitations. If their right or estate did not accrue until the death of the life tenant, the action was not barred.

An order for partition is granted in accordance with the above finding.

I. L. Magruder, attorney for Lydia Weymouth and A. W. Osborne, executor.

Hamilton & Hamilton, attorneys for heirs of William Weymouth et al.

Little & Spencer, attorneys for devisees of Martha Jane McAfee et al.

(The judgment in this case was affirmed by the circuit court, at the November term, 1897.)